[Cite as *O'Neal v. Reeves*, 2026-Ohio-2836.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Felicia R. O'Neal, | : | |
| Plaintiff-Appellant, | : | No. 25AP-635 |
| | | (C.P.C. No. 19DR-1508) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Shawn Reeves, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 23, 2026

**On brief:** *Felicia R. O'Neal*, pro se. **Argued:** *Felicia R. O'Neal.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

JAMISON, J.

{¶ 1}  Plaintiff-appellant, Felicia R. O'Neal, appeals from a July 14, 2025 judgment entry from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, adopting the magistrate's decision granting in part appellant's motion for contempt against defendant-appellee, Shawn Reeves.  For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On January 22, 2020, the trial court filed a decree of divorce between the parties.  The children in question were J.R., born May 20, 2016; K.R., born October 16, 2007; S.R., born January 16, 2005; and I.R., born January 21, 2002.  The decree of divorce listed several orders for the parties.

{¶ 3}  First, the decree of divorce designated appellant as the residential parent and legal custodian of the parties' minor children—three of whom have since reached the age of

majority. Second, appellee was required to pay child support in the amount of $1,077.19 per month and cash medical support in the amount of $53.39 per month. The parties were ordered to split the children's extraordinary medical expenses, which were defined as expenses that exceeded $388.70 per year, per child, for a total of $1,554.80. In addition, the expenses were to be submitted to the insurance provider before providing notice to the other party. Upon notice of said expenses, the other party was to provide reimbursement within 30 days. Finally, the parties were ordered to provide to the other party notice, schedules, and the name of the activity leader for any extracurricular activities. The cost was to be split evenly between the parties. In the event they did not agree on said activity, the party who sought to enroll the child was ordered to bear the extra cost of the activity and make the transportation arrangements.

{¶ 4} On October 1, 2024, appellant filed a motion for contempt which asserted that appellee failed to comply with the orders in the decree of divorce. In appellant's motion for contempt, she alleged that appellee, among other forms of misconduct, misreported his income, failed to pay or reimburse 50 percent of the children's extracurricular and healthcare expenses, and failed to pay his marital debt obligations. Appellant asserted appellee caused her emotional distress and failed to comply with R.C. 3121.24 by providing incomplete notice of employment information, income, and residence. The relief she sought in her testimony was full reimbursement for expenses owed on extracurricular activities and extraordinary medical expenses.

{¶ 5} The motion for contempt came before a magistrate of the trial court. Hearings were held over two non-consecutive days. Both parties appeared physically on the first day of the proceedings. Appellee requested to appear remotely for the second hearing. The magistrate asked appellant whether she objected to appellee's remote appearance, and appellant did not. In allowing appellee to appear remotely, the magistrate explained that appellee's credibility was observable. The magistrate indicated that the court was considering the cost and time required of him traveling to the court, due to appellee residing in Georgia. Without objection, the magistrate allowed appellee to appear remotely by Zoom on the second day of the hearing.

{¶ 6} The magistrate heard testimony and took evidence on appellant's motion for contempt. The court found appellee's reasons for not paying expenses were without merit.

Thus, it determined that appellant proved by clear and convincing evidence that appellee was in contempt for failing to pay his share of uncovered medical expenses. In determining the amount owed to appellant, the court referenced the language in the decree of divorce.

{¶ 7} Regarding each child, the trial court specifically found that, prior to I.R. reaching the age of majority, his medical expenses totaled $307.30 in uncovered medical bills. Therefore, the court held that appellant did not meet the extraordinary medical expense threshold of $388.70. Prior to S.R. reaching the age of majority, appellant paid $35.00 for charges ranging from August 23 through November 17, 2022. Therefore, the court held that appellant did not meet the extraordinary medical expense threshold of $388.70. Regarding K.R., appellant paid $440.10 in uncovered medical expenses. The court held that this was $51.40 over the extraordinary medical expense threshold. Therefore, appellee was ordered to pay half of that amount, $25.70. Finally, regarding J.R., appellant testified that appellee owed $17.50 for charges that occurred on November 11, 2022. The total paid by appellant was $35.00. Therefore, the court held that appellant did not meet the extraordinary medical expense threshold of $388.70.

{¶ 8} The trial court determined that the remaining charges were either not above the threshold of $388.70 per child, not testified to by appellant, or generally not legible to the court. Thus, the court found appellee in contempt of the decree of divorce and ordered him to pay $25.70 in uncovered medical expenses within 30 days of the judgment entry. The court also sentenced appellee to 3 days incarceration, which was suspended upon his purging of the contempt.

{¶ 9} Regarding the extracurricular expenses, the trial court found that insufficient testimony was provided. More specifically, the magistrate noted that there was no evidence that appellee agreed to these expenses as required by the decree of divorce. Ultimately, the magistrate determined appellant did not prove by clear and convincing evidence that appellee should be held in contempt for said expenses. The magistrate issued a decision on June 16, 2025.

{¶ 10} The transcript for the hearing held on February 12, 2025 was filed on March 7, 2025. The transcript for the hearing held on March 14, 2025 was filed on April 16, 2025. The magistrate's decision was issued on June 16, 2025. However, appellant did not file objections to the magistrate's decision. The trial court adopted the magistrate's factual

findings and conclusions of law in a July 14, 2025 judgment.  It is from that judgment that appellant now timely appeals.

## II.  ASSIGNMENTS OF ERROR

{¶ 11}  Appellant assigns the following as trial court error:

1. The trial court erred and abused its discretion by disregarding **Exhibit 4**, despite it being duly filed, admitted into evidence, and explained in sworn testimony, thereby prejudicing Appellant by reducing reimbursement to $25.70 instead of the full proven amounts.

2. The trial court erred by finding Exhibit 4 **"not legible"** and **"not testified to,"** when the transcript shows Appellant walked through each page and the Magistrate and Appellees Counsel acknowledged receipt.

3. The trial court erred by disregarding Exhibit 5 extracurricular expenses, which were filed, admitted, and explained in sworn testimony, thereby excluding relevant proof of unpaid obligations.

4. The trial court erred by disregarding evidence of Appellee's perjury when he testified that he could not access the parenting app, despite authenticated Talking Parents records proving he downloaded over 90 receipts across five years.

5. The trial court erred by ignoring Appellee's admissions under oath that he withheld reimbursements deliberately in retaliation for parenting time disputes, which constituted direct evidence of willful contempt.

6. The trial court erred by misapplying the decree's reimbursement provisions, including the 30-day deadline for repayment, by permitting Appellee to impose unauthorized payment plans and conditions while holding Appellant to strict compliance.

7. The trial court erred by disregarding evidence of misrouted federal stimulus checks and child tax credits.

8. The trial court erred by failing to address Appellee's false affidavits regarding income, reimbursements, and access, despite Appellant's proof of falsity, thereby allowing perjury to shape the outcome.

9. The trial court erred by showing favoritism and unequal accommodation, including permitting Appellee to appear by Zoom to save costs while requiring Appellant to appear in person, and by crediting Appellee's generalized denials over Appellant's documentary proof.

10. The trial court's ruling, granting contempt only in the amount of $25.70, is against the manifest weight of the evidence, where **Exhibits 4 and 5** contained thousands of dollars of unreimbursed expenses supported by authenticated records and sworn testimony.

11. The trial court erred failing to address evidence that Appellee engaged in the unauthorized use of Appellant's personal identifying information for financial gain, in violation of the divorce decree's restraining order provision prohibiting either party from using the other's information to harm credit.

12. The trial court erred by disregarding Appellant's evidence of post-divorce financial abuse, including unauthorized credit use in Ohio and Georgia, which constituted ongoing contempt and coercive control. Appellee's misconduct was further compounded following the July 14, 2025, purge order, where the minimal sanction of $25.70 failed to deter noncompliance. Instead, Appellee delayed even that payment, then used the token amount as leverage to harass Appellant and continue disputing reimbursements, escalating his retaliatory conduct in direct violation of the court's intent to compel compliance.

13. The trial court erred by disregarding Appellee's own admission that he used Appellant's information to "save a few dollars here and there," a direct acknowledgment of unauthorized use constituting contempt.

14. The trial court erred by disregarding cumulative evidence that Appellee engaged in a pattern of financial misconduct, including withholding payments, underreporting income for child support, failing to pay arrears, and attempting to harm Appellant's credit—conduct that may rise to criminal financial abuse.

15. The trial court erred by disregarding Exhibit 3 (filed Feb. 11, 2025), which documented $1,028.33 in child support arrears caused by Appellee's willful impounds, and by failing to acknowledge the Child Support records submitted showing the current arrears balance.

(Emphasis in original.)

## III. STANDARD OF REVIEW

{¶ 12} A party may file written objections to a magistrate's decision within 14 days of the filing of the decision, whether or not the trial court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than 10 days after the first objections are

filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law. Civ.R. 53(D)(3)(b)(i).

{¶ 13} Pursuant to Civ.R. 53(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D) imposes an affirmative duty on the parties to timely object to a magistrate's order, identifying any error of fact or law. *Buford v. Singleton*, 2005-Ohio-753, ¶ 5 (10th Dist.). This court has held that failure to object to a magistrate's decision or order waives the right to appellate review of all but plain error. *Id.* at ¶ 6.

{¶ 14} Further, the Supreme Court of Ohio has stated that in applying the doctrine of plain error in civil cases, "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 24. " '[I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process.' " *Tanner v. Umeh*, 2020-Ohio-3470, ¶ 11 (10th Dist.), quoting *State v. Morgan*, 2017-Ohio-7565, ¶ 40.

## IV. LEGAL ANALYSIS

{¶ 15} Procedurally, appellant filed a transcript of the proceedings; however, appellant failed to file objections to the magistrate's decision within the 14 days allowed by Civ.R. 53. In *Brown v. Zurich*, 2002-Ohio-6099, ¶ 26 (10th Dist.), this court stated, "A party who does not file written objections to a magistrate's decision may not raise on appeal issues on the merits that might have been the basis of the objections." *See also* Civ.R. 53(D)(3)(b)(iv) ("[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, . . . unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)"). Thus,

appellant waived all but plain error on appeal. *See In re G.S.*, 2011-Ohio-2487*,* ¶ 6 (10th Dist.).

{¶ 16} Appellant asks us to excuse her failure to file objections because she inadvertently filed a notice of appeal instead of objections in the trial court. Appellant further asserts that because she has provided trial court transcripts and confined all exhibits to the evidence admitted, this court has a record before it that is sufficient for meaningful review. However, it is well-settled that pro se litigants are held to the same standard as attorneys. *Rizzo-Lortz v. Erie Ins. Group*, 2019-Ohio-2133, ¶ 18 (10th Dist.). Thus, we find the alleged reasons for her procedural mistake unpersuasive.

{¶ 17} Appellant invites this court to review the findings of fact, as well as the conclusions of law reached by the magistrate. In *Campbell v. Campbell*, 2021-Ohio-2045 ¶ 15 (10th Dist.), this court held that, where the appellant failed to object to the magistrate's decision and did not present any argument regarding plain error, the trial court did not err. We conclude that, as in *Campbell*, appellant failed to object and the decision is subject to review only for plain error.

{¶ 18} Even if we could review the findings of fact, a reviewing court's disagreement with a factual finding does not, in itself, constitute plain error. Rather, it requires an obvious error that affected the outcome of the proceedings. *Tanner*, 2020-Ohio-3470, at ¶ 1 (10th Dist.). "The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." *Goldfuss*, 1997-Ohio-401, at ¶ 29.

{¶ 19} The appellant bears the burden of proving error by reference to matters in the record. *Graddic v. Wharton*, 2025-Ohio-5157, ¶ 1 (10th Dist.). The rule contemplates objections first, with the transcript filed in support of those objections afterward. *See* Civ.R. 53(D)(3)(b)(iii) ("The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time . . ."). Appellant partially complied with Civ.R. 53(D)(3)(b)(ii) by filing a transcript, but ultimately, she filed no objections to the magistrate's decision, nor did she request leave to file a late filing. Appellant filed a timely appeal but did not invoke the plain error doctrine in her assignments of error on appeal, and nothing in the record warrants its application.

We apply the holding of *Campbell*, where this court held that an appellant failing to present arguments for plain error left the court to discern no grounds for finding plain error. *Campbell* at ¶ 15.

{¶ 20} The plain error doctrine must be limited to extremely rare cases involving exceptional circumstances where error seriously affects basic fairness, integrity, or public reputation in the judicial process. *Buford*, 2005-Ohio-753, at ¶ 6 (10th Dist.). Appellant raises no assignment of error that allows this court to find that there is any procedural unfairness, or that the integrity or public reputation of the judicial process affected the outcome of the proceedings. Thus, we conclude that the trial court did not err.

{¶ 21} Based on the foregoing, each of appellant's 15 assignments of error are overruled.

## V. CONCLUSION

{¶ 22} Having overruled each of appellant's 15 assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____